UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAROLYN L. HALY,                          )      No. EDCV 08-0672-RC
                                          )
            Plaintiff,                    )
                                          )      OPINION AND ORDER
      v.                                  )
                                          )
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )
            Defendant.                    )
_____)


      Plaintiff Carolyn L. Haly filed a complaint on May 22, 2008,

seeking review of the Commissioner's decision denying her application

for disability benefits, and on October 20, 2008, the Commissioner

answered the complaint.  The parties filed a joint stipulation on

December 15, 2008.


                            **BACKGROUND**

                                **I**

      On December 19, 2005, plaintiff applied for disability benefits

under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423,

claiming an inability to work since January 26, 2004, due to spinal

1    cysts, bulging discs, and depression.[1]  Certified Administrative

2    Record ("A.R.") 59-61, 97.  The plaintiff's application was initially

3    denied on May 19, 2006, and was denied again on December 21, 2006,

4    following reconsideration.  A.R. 40-51.  The plaintiff then requested

5    an administrative hearing, which was held before Administrative Law

6    Judge Jay E. Levine ("the ALJ") on January 24, 2008.  A.R. 35, 515-45.

7    On March 8, 2008, the ALJ issued a decision finding plaintiff is not

8    disabled.  A.R. 6-17.  The plaintiff appealed this decision to the

9    Appeals Council, which denied review on May 1, 2008.  A.R. 2-5.

10

11                               **II**

12        The plaintiff, who was born on October 7, 1950, is currently 58

13   years old.  A.R. 59.  She has a twelfth-grade education, previously

14   worked as a paramedical examiner and customer service representative,

15   and was a medical services technician in the military.  A.R. 88-95,

16   97-98, 102, 132-33, 138.

17

18        In 2000 and 2001, plaintiff was hospitalized for mental

19   problems.[2]  Between October 29 and November 5, 2000, plaintiff was

20   hospitalized at Redlands Community Hospital, where she was diagnosed

21   with type-II bipolar disorder and her Global Assessment of Functioning

22   //

23   //

24   _____

25       [1]  Plaintiff's previous application for disability benefits
     was denied on September 16, 2005.  A.R. 52-56.

26       [2]  Although plaintiff has both physical and mental
27   complaints, she challenges only the ALJ's assessment of her
     mental condition; therefore, the Court addresses only those
28   medical records related to plaintiff's mental state.

("GAF") was determined to be 30 upon admission and 65 upon discharge.[3] A.R. 311-26.  Between March 9 and 12, 2001, plaintiff was hospitalized at Community Hospital of San Bernardino with complaints of depression and suicidal ideation, she was diagnosed with recurrent major depressive disorder superimposed on dysthymic disorder, and her GAF was determined to be 35 upon admission[4] and 65 upon discharge.  A.R. 236-45.

On August 30, 2005, Linda M. Smith, M.D., a psychiatrist, examined plaintiff, diagnosed her with a dysthymic disorder, and determined her GAF was 66.  A.R. 379-84.  Dr. Smith opined plaintiff is "mildly" impaired in her ability to interact appropriately with supervisors, co-workers, or the public, but is otherwise not impaired. A.R. 383-84.  On May 5, 2006, Dr. Smith re-examined plaintiff,

_____

[3]  A GAF of 30 means "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000) ("DSM-IV-TR").  However, a GAF of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  Id.

[4]  A GAF of 35 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).  DSM-IV-TR at 34.

diagnosed her with an unspecified depressive disorder, and determined plaintiff's GAF was 61.  A.R. 222-27.  Dr. Smith again opined plaintiff is "mildly" impaired in her ability to interact appropriately with supervisors, co-workers, or the public, but is otherwise not impaired.  A.R. 227.

On December 10, 2006, Sohini P. Parikh, M.D., a psychiatrist, examined plaintiff, diagnosed her with a mood disorder because of medical condition, and determined her GAF was 70.  A.R. 169-75.  Dr. Parikh concluded that:  "from a psychiatric standpoint, the [plaintiff] does not seem to have any impairment in the ability to reason and make social, occupational, and personal adjustments[;] . . . [she] is able to understand, carryout, and remember simple instructions[;] [she] can follow complex instructions[;] [she] should be able to interact appropriately with coworkers[;] [and][she] should be able to respond appropriately to the usual work settings in such matters as attendance and would not have a hard time adjusting to changes in the work routine."  A.R. 174.

Since January 11, 2007, plaintiff has received treatment at Loma Linda Veterans Administration Medical Center ("VA").  A.R. 141-68.  On January 11, 2007, Alma A. Gonzaga, M.D., diagnosed plaintiff with depression and prescribed Celexa[5] for her.  A.R. 165-66.  On February 27, 2007, Joshua M. Buley, Psy.D., a psychologist, examined

---

[5]  Celexa, also called citalopram, "is used to treat major depression – a stubbornly low mood that persists nearly every day for at least 2 weeks and interferes with everyday living."  The PDR Family Guide to Prescription Drugs, 126, 132 (8th ed. 2000).

1    plaintiff and diagnosed her as having a dysthymic disorder and a

2    history of severe recurrent major depressive disorder, without

3    psychotic features, and determined plaintiff's GAF was 45.[6]  A.R. 148-

4    55.  Dr. Buley noted plaintiff's "significant" mental health history,

5    which includes several psychiatric hospitalizations and three suicide

6    attempts, most recently on April 18, 2005, when plaintiff overdosed on

7    a bottle of Vicodin.  A.R. 149.  On June 18, 2007, Edward Verde, M.D.,

8    examined plaintiff, diagnosed her with a major depressive disorder,

9    and determined plaintiff's GAF was 45.  A.R. 142-43.  Dr. Verde noted

10   plaintiff complained of side effects of sedation and jitteriness from

11   Celexa, and he changed plaintiff's medication to Lexapro.[7]  A.R. 142.

12

13                              **DISCUSSION**

14                                  **III**

15       The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

16   review the decision denying plaintiff disability benefits to determine

17   if his findings are supported by substantial evidence and whether the

18   Commissioner used the proper legal standards in reaching his decision.

19   <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir. 2009); <u>Vernoff v.</u>

20   <u>Astrue</u>, 568 F.3d 1102, 1105 (9th Cir. 2009).

21

22       The claimant is "disabled" for the purpose of receiving benefits

23   _____

24       [6]  A GAF of 45 means that the plaintiff exhibits "[s]erious
     symptoms (e.g., suicidal ideation, severe obsessional rituals,
25   frequent shoplifting) or any serious impairment in social,
     occupational, or school functioning (e.g. no friends, unable to
26   keep a job)."  DSM-IV-TR at 34.

27       [7]  Lexapro, also called escitalopram, is indicated for the
     treatment of major depressive disorder and generalized anxiety
28   disorder.  <u>Physician's Desk Reference</u>, 1175 (63rd ed. 2009).

under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden of establishing a prima facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. § 404.1520(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has suffi-cient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 404.1520(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).  Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential

1  evaluation process with additional regulations addressing mental

2  impairments.[8]  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913,

3  914 (9th Cir. 1998) (per curiam).

4

5      Applying the five-step sequential evaluation process, the ALJ

6  found plaintiff has not engaged in substantial gainful activity since

7  her alleged disability onset date of January 26, 2004.  (Step One).

8  The ALJ then found plaintiff has the severe impairments of:

9  degenerative disc disease, status post-spinal fusion, and obesity;

10  however, she does not have a severe mental impairment.  (Step Two).

11  The ALJ also found plaintiff does not have an impairment or

12  combination of impairments that meets or equals a Listing.  (Step

13  Three).  Finally, the ALJ determined plaintiff is able to perform her

14  past relevant work as a customer service representative; therefore,

15  she is not disabled.  (Step Four).

16

17                          **IV**

18      The Step Two inquiry is "a de minimis screening device to dispose

19  of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart,

20  433 F.3d 683, 687 (9th Cir. 2005).  Including a severity requirement

21  at Step Two of the sequential evaluation process "increases the

22  efficiency and reliability of the evaluation process by identifying at

23  an early stage those claimants whose medical impairments are so slight

24  that it is unlikely they would be found to be disabled even if their

25  age, education, and experience were taken into account."  Bowen v.

26  _____

27      [8]  These regulations require the ALJ to determine the
presence or absence of certain medical findings relevant to the
28  ability to work.  See 20 C.F.R. § 404.1520a.

7

1   Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119

2   (1987).  However, an overly stringent application of the severity

3   requirement violates the Act by denying benefits to claimants who meet

4   the statutory definition of disabled.  Corrao v. Shalala, 20 F.3d 943,

5   949 (9th Cir. 1994).

6

7       A severe impairment or combination of impairments within the

8   meaning of Step Two exists when there is more than a minimal effect on

9   an individual's ability to do basic work activities.  Webb, 433 F.3d

10  at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see

11  also 20 C.F.R. § 416.921(a) ("An impairment or combination of

12  impairments is not severe if it does not significantly limit [a

13  person's] physical or mental ability to do basic work activities.").

14  Basic work activities are "the abilities and aptitudes necessary to do

15  most jobs," including physical functions such as walking, standing,

16  sitting, lifting, pushing, pulling, reaching, carrying or handling, as

17  well as the capacity for seeing, hearing and speaking, understanding,

18  carrying out, and remembering simple instructions, use of judgment,

19  responding appropriately to supervision, co-workers and usual work

20  situations, and dealing with changes in a routine work setting.

21  20 C.F.R. § 416.921(b); Webb, 433 F.3d at 686.

22

23      Here, the ALJ determined at Step Two that plaintiff does not have

24  a severe mental impairment.  However, plaintiff contends the ALJ's

25  finding is not supported by substantial evidence because the ALJ

26  failed to properly consider the opinions of her treating physicians,

27  //

28  //

8

1  Drs. Buley and Verde.[9]  The plaintiff is correct.

2

3      The medical opinions of treating physicians are entitled to

4  special weight because the treating physician "is employed to cure and

5  has a greater opportunity to know and observe the patient as an

6  individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);

7  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

8  1999).  Therefore, the ALJ must provide clear and convincing reasons

9  for rejecting the uncontroverted opinion of a treating physician, Ryan

10  v. Comm'r of the Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir.

11  2008); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), and

12  "[e]ven if [a] treating doctor's opinion is contradicted by another

13  doctor, the ALJ may not reject this opinion without providing

14  'specific and legitimate reasons' supported by substantial evidence in

15  the record." Reddick, 157 F.3d at 725; Tommasetti v. Astrue,

16  533 F.3d 1035, 1041 (9th Cir. 2008).

17

18      Here, the ALJ erroneously determined that the medical opinions of

19  Drs. Buley and Verde supported his Step Two finding that plaintiff

20  does not have a severe mental impairment, A.R. 12, 16, without

21  explaining, or rejecting, the opinions of both Dr. Buley and Dr. Verde

22  that plaintiff's GAF was 45 on two occasions in 2007.  See A.R. 143,

23  153.  Since a GAF score of 45 indicates "[s]erious symptoms," the ALJ

24  ───────────────

25      [9]  The parties agree Drs. Buley and Verde are plaintiff's
     treating VA doctors, see Jt. Stip. at 3:1-14:4; therefore, for
26  purposes of this opinion only, the Court considers their medical
     opinions to be opinions by treating sources.  Cf. Benton v.
27  Barnhart, 331 F.3d 1030, 1035-40 (9th Cir. 2003).  (Even if both
     doctors are considered examining physicians, the result would be
28  the same.)

must discuss it when, as here, he has not provided any rationale for
otherwise rejecting a treating physician's opinion of a claimant's
overall mental functioning, and such opinion contradicts the ALJ's
Step Two finding that the claimant does not have a severe mental
impairment.  See, e.g., Vasquez, 572 F.3d at 596 (doctor's determina-
tion of claimant's GAF of 49 could support finding claimant has severe
mental impairment); McCloud v. Barnhart, 166 Fed. Appx. 410, 418 (11th
Cir. 2006) (per curiam) (Unpublished) ("We are unable to determine
from the record what weight the ALJ placed on the GAF score of 45;
therefore, we reject the Commissioner's argument that any error was
harmless.  With the knowledge that a GAF score of 45 reflects severe
impairments, the ALJ should determine what, if any, weight to place on
the score."); Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir.
2004) (Unpublished) ("A GAF score of 50 or less . . . does suggest an
inability to keep a job.  In a case like this one, decided at step
two, the GAF score should not have been ignored." (citation omitted));
Bennett v. Barnhart, 264 F. Supp. 2d 238, 255 (W.D. Pa. 2003)
(Contrary to ALJ's Step Two determination, "a GAF score of 55 to 60
suggests . . . a mental impairment that is 'severe' in nature.");
Roach v. Astrue, 2009 WL 2407961, *4 (C.D. Cal.) (ALJ erred in failing
to consider physician's opinion that claimant had GAF of 47, which
contradicted ALJ's Step Two finding claimant did not have severe
mental impairment); Rodriquez v. Astrue, 2009 WL 1586529, *2 (C.D.
Cal.) ("[T]he ALJ erred in his Step Two determination by failing to
properly consider the treating clinician's . . . opinion that [the
claimant] suffered from a severe mental impairment, as evidenced by
the clinician's rating of [the claimant's GAF] at 50."). Therefore,
the ALJ's Step Two determination that plaintiff does not have a severe

1  mental impairment is not supported by substantial evidence.

2

3                                   V

4       When the ALJ's decision is not supported by substantial evidence,

5  the Court has the authority to affirm, modify, or reverse the decision

6  "with or without remanding the cause for rehearing."  42 U.S.C. §

7  405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).

8  Generally, "'the proper course, except in rare circumstances, is to

9  remand to the agency for additional investigation or explanation.'"

10 Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Moisa v.

11 Barnhart, 367 F.3d 882, 886 (9th Cir. 2004).  Here, remand is

12 appropriate so the ALJ can properly assess the medical evidence and

13 determine whether plaintiff has a severe mental impairment and is

14 disabled.[10]  Vasquez, 572 F.3d at 597; Webb, 433 F.3d at 688.

15

16                                 ORDER

17      IT IS ORDERED that: (1) plaintiff's request for relief is

18 granted; and (2) the Commissioner's decision is reversed, and the

19 action is remanded to the Social Security Administration for further

20 proceedings consistent with this Opinion and Order, pursuant to

21 sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered

22 accordingly.

23 DATE:  August 27, 2009            /S/ ROSALYN M. CHAPMAN
                                    ROSALYN M. CHAPMAN
24                                  UNITED STATES MAGISTRATE JUDGE

25 _____

26     [10]  Having reached this conclusion, it is unnecessary to
   reach the other issues plaintiff raises, none of which will
27 provide plaintiff any further relief than herein granted.

28 R&R-MDO\08-0672.mdo
   8/27/09